# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiffs, | 2:13–cr–0132–LDG–VCF |
| vs. | |
| RAMZI SULIMAN, *et al.*, | **ORDER** |
| Defendants. | |

This matter involves the Government's prosecution of Jeffrey Nowak and Ramzi Suliman for tax evasion. Before the court is Nowak's motion for a *Franks'* hearing (#34[1]), which is joined by Suliman (#36). The Government filed a sealed opposition (#37); and, Nowak replied (#40). For the reasons discussed below, Nowak's motion for a *Franks'* hearing is denied.

## BACKGROUND[2]

In the motions before the court, Nowak and Suliman request a hearing to challenge the U.S. Magistrate Judge's decision that the Government's search warrants supported a finding of probable cause. For purposes of these motions, the relevant facts include: (1) the Government's investigation; (2) the Government's search warrants; and, (3) the motions before the court.

**I.      The Government Investigates**

Defendants Jeffrey Nowak and Ramzi Suliman are friends and business partners. (Def.'s *Franks'* Hearing Mot. (#34) at 3:2–8). Together, they own and operate three Super Liquor stores in Las Vegas,

---

[1] Parenthetical citations refer to the court's docket.
[2] These facts are recited for background purposes only and do not constitute binding findings of fact. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001).

Nevada, which are individually incorporated as Fine Fellas, Inc., Best Fellas, Inc., and Big Fellas, Inc. (*Id*. at 3:2–8; 5–6).

Nowak and Suliman, however, allegedly treat their employees poorly. (*See* Setness Decl. (#35-5) Ex. 21 at 2). They pay employees in hand written checks, do not withhold taxes, and "abuse labor standards." (*Id*.) Frustrated by this, and motivated by the possibility of a financial reward, one of Nowak and Suliman's employees (hereinafter "the Informant") decided to contact the Criminal Investigation unit of the Internal Revenue Service. (*Id*.)

On December 7, 2010, the Informant and his attorney met with IRS Special Agents Bottjer and Rickey. (*Id*. at 1). The Informant wanted to confirm that he was "the first in line" for any potential reward, and help the agents with any potential investigation into Nowak and Suliman. (*Id*.) In pertinent part, the Informant told the agents that: (1) he has worked for Nowak and Suliman since 2006 as a night manager at Big Fellas; (2) Nowak and Suliman keep two sets of books, one with actual figures and one with reported figures; and, (3) Nowak and Suliman close out the till every $2,000 and "take the cash and destroy the sales tap[e]" if "a particular tap[e] is predominately cash." (*Id*. at 1–4).

The Informant also told the agents that Nowak has a gambling problem. (*Id*. at 4). In fact, between 2006 and 2009, Nowak's tax returns stated that he had won approximately $872,029.00 and lost approximately $934,872.00. (*See* Gov't's Opp'n (#37) at 7:20–24) (citing Nowak's individual tax returns for 2006–2009). This means that Nowak's reported gambling losses exceeded sixty-five thousand dollars for 2006–2009. (*See id*.)

On January 20, 2011, the Informant and Special Agent Bottjer met again. (*See* Setness Decl. (#35-5) Ex. 22 at 1). In pertinent part, the Informant stated that: (1) he quit his job at Super Liquors on December 26, 2010; (2) other employees know that Nowak and Suliman "are skimming cash;" (3) Nowak and Suliman are stockpiling cash to open a fourth store; (4) Nowak "is beginning to and has

2

been covering his tracks;" and (5) and, Nowak "has made statements like: '[let] the IRS come after me, I'm ready.'" (*Id*. at 1–2).

On February 28, 2011, the Informant and Special Agent Bottjer met for a third time. (*See* Setness Decl. (#35-1) Ex. 1, Aff. of Bottjer at ¶ 23). The Informant provided Bottjer with "statements and copies of financial documents, ledgers, and notes written in Nowak's handwriting" that indicated that Nowak and Suliman were intentionally under reporting their sales. (*Id*.)

## II.     The Government Applies for Search Warrants

On March 4, 2011, the Government applied for warrants to search Fine Fellas, Inc., Best Fellas, Inc., Big Fellas, Inc., and Nowak's residence in Henderson, Nevada. (*See* Setness Decl. (#35-1) Exs. 2, 5, 8, 11). In support of the search warrants, Special Agent Bottjer executed an affidavit, stating that, at Big Fellas alone, the "the total amount of gross receipts that were unreported to the IRS" from 2006 through 2009 was $3,983,000.00. (*See* Setness Decl. (#35-1) Ex. 2, Aff. of Bottjer at ¶ 30) (itemizing the individual years as follows: "2006: $608,508; 2007: $731,231; 2008: $1,242,871; 2009: $1,400,390.").

After detailing the total amount of under reported receipts, Bottjer's affidavit introduced a new section with the heading: "Nowak Diverts the Unreported Cash Sales." (*Id*.) This section explained where and when Nowak made various cash deposits into his personal bank account. (*Id*.) For instance, the affidavit states, "[b]etween May of 2008 and Februrary 2010, Nowak made cash deposits of approximately $493,718.00 into his personal bank account." (*Id*. at ¶ 32(a)). Additionally, the affidavit also reported that "Nowak funded a separate individual high-yield investor checking account with Charles Schwab. Between January 2008 and May 2009, 429 ATM withdrawals were made on Nowak's Charles Schwab account, totaling $215,000.00." (*Id*. at ¶ 33).

Bottjer's affidavit also reported that the investigation was initiated by the Informant, who "submitted . . . an Application for an Award for Original Information" pursuant to the IRS's whistle blower program. (*See* Setness Decl. (#35-1) Ex. 2, Aff. of Bottjer at ¶ 24).

### III. The Government Prosecutes

On March 23, 2011, the Government returned executed warrants for Fine Fellas, Inc., Best Fellas, Inc., Big Fellas, Inc., and Nowak's residence in Henderson, Nevada. (*See* Setness Decl. (#35-1) Exs. 2, 5, 8, 11). On April 10, 2013, Nowak and Suliman were indicted on twelve counts related to tax evasion. (*See* Indict. (#1) 2–7). And, on November 8, 2013, Nowak and Suliman filed the motions before the court.

The essence of Nowak and Suliman's argument is that the section of Bottjer's affidavit entitled "Nowak Diverts the Unreported Cash Sales," summarizes all of the cash deposits that Nowak made over the course of four years, which included significant cash deposits related to lawfully reported gambling winnings. (*See* Pl.'s *Franks* Mot. (#34) at 4). The existing gambling winnings, however, was omitted from Bottjer's affidavit. (*Id.*) As a result, Nowak argues that Bottjer's affidavit erroneously led the U.S. Magistrate Judge to conclude that all of the cash that Nowak deposited from 2006 through 2009 was the product of tax evasion related to Nowak's liquor stores. (*Id.*)

## DISCUSSION

The parties' filings present two questions: (1) whether it was proper for the Government to file its opposition and exhibits under seal; and, (2) whether the affidavits' omission of Nowak's gambling winnings tainted U.S. Magistrate Judge Lawrence Leavitt's probable cause finding. Before addressing these questions, the court begins is analysis of Nowak's motion by reviewing the Supreme Court's decision in *Franks v. Delaware*, 438 U.S. 154 (1978), which governs the court's inquiry.

**I.      The Fourth Amendment & *Franks v. Delaware***

The Fourth Amendment protects "against unreasonable searches and seizures." It provides that "[n]o warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. The text of the Fourth Amendment expressly imposes three requirements on searches and seizures. First, the searches and seizures must be "reasonable." Second, if required, all warrants must be predicated "upon probable cause." Third, if required, all warrants must "particularly describe[s] the place to be searched, and the persons or things to be seized." *Id*.

The probable cause requirement is normally satisfied by an affidavit executed by an investigating officer. Probable cause exists if "a magistrate judge" concludes that "given all the circumstances set forth in the affidavit[,] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U .S. 213, 238–39 (1983). Probable cause is a fluid concept. *Id*. It is the product of "a practical, common-sense" inquiry, which is not easily reduced to a set of legal rules. *Id*.

In *Franks v. Delaware*, 438 U.S 154 (1978), the Supreme Court established a two-prong test for overturning the magistrate judge's probable cause finding. First, the there is a "presumption of validity with respect to the affidavit supporting the search warrant." *Id*. at 171. Second, a defendant is entitled to an evidentiary hearing on the validity of the affidavit only if he can make a substantial showing that: (1) the affidavit contains intentionally or recklessly false statements or misleading omissions; and, (2) the affidavit cannot support a finding of probable cause without the false information or with the misleading omissions. *Id*. at 155–56.

This means that a defendant must show that the affidavit could not support a finding of probable cause even if it was purged of its falsities and supplemented by the omissions. *See Stanert*, 762 F.2d at 782 (citing *Franks*, 438 U.S. at 171–72). A judge's probable cause determination is accorded

"significant deference," *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995), and will be overturned only if it is "clearly erroneous." *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985). In making the determination, the court is "limited to the information and circumstances contained within the four corners of the underlying affidavit." *Id*. The duty of a reviewing court is to ensure that the magistrate judge had a "substantial basis" for concluding that probable cause existed. *Gates*, 462 U.S. at 238 (internal quotations omitted).

## II.     The Government's Opposition will be Unsealed

As an initial matter, the court notes that the Government filed its opposition and exhibits under seal. This was inappropriate. In federal court, there is a "strong" presumption of public access to judicial files and records. *Kamakana v. City and Cnty of Honolulu*, 447 F.3d 1172, 1179–80 (9th Cir. 2006). This presumption is predicated on "the interest of citizens [and newspapers] in 'keep[ing] a watchful eye on the workings of public agencies.'" *Id*. (citing *Richard Nixon v. Warner Commc'n, Inc*., 435 U.S. 589, 598 (1978).

*Kamakana* requires a separate motion for permission to seal documents attached to non-dispositive motions. As stated in *Kamakana*, a particularized showing under the good cause standard will suffice to warrant preserving the secrecy of sealed discovery material attached to non-dispositive motions. *Kamakana*, 447 F.3d at 1179–80 (citing *Foltz v. State Farm Mutual Auto. Ins. Co.*, 331 F.3d 1122, 1138 (9th Cir. 2003) (emphasis added). The decision to seal filings rests with the court, not the parties. *Kamakana*, 447 F.3d at 1179–8.

Here, the Government "file[d] this motion under seal because Defendant Nowak's individual tax returns are attached in full as exhibits." (Govt's Opp'n (#37) at 1:20–21). The Government did not file a separate motion to seal, as required by *Kamakana*. The Ninth Circuit has prescribed procedures for protecting private information, which this court must follow. Accordingly, unless the Government files

6

an appropriate motion, the court orders the Government's opposition to be unsealed. However, the Government's exhibits (#38, #39) will remain under seal because they contain Nowak's individual tax returns. *See, e.g.*, *In re Hydroxycut Mktg. and Sales Practices Litig.*, No. 9–md–2087, 2011 WL 864897 at *1 (S.D. Cal. March 11, 2011) (citing *Kamakana* and finding good cause to seal individual tax returns).

**III.    Whether the Affidavits' Omission of Nowak's Gambling Winnings Tainted the Probable Cause Finding**

The court now turns to the question of whether Bottjer's omission of Nowak's gambling winnings tainted U.S. Magistrate Judge Leavitt's probable cause finding. The essence of Nowak's argument is that Bottjer's affidavit erroneously led the Judge Leavitt to conclude that all of the cash that Nowak deposited into his bank accounts—including cash from gambling winnings—was the product of tax evasion. (*See* Pl.'s *Franks* Mot. (#34) at 4). In response, the Government argues that Nowak's gambling winnings were "immaterial" to the probable cause finding because: (1) they do not account for all of the cash deposits made between 2006 and 2009; and (2) even if Nowak's gambling winnings were included, the affidavit supported a finding of probable case. (Gov't Opp'n (#37) at 8:4, 15).

For Nowak's argument to prevail, Nowak must "make a substantial showing that (1) Bottjer's affidavit contains "intentionally or recklessly" misleading omissions and (2) Judge Leavitt would not have concluded that probable cause existed even if the affidavit included the fact that between 2006 and 2009 Nowak had won approximately $872,029.00 and lost approximately $934,872.00. (*See* Gov't's Opp'n (#37) at 7:20–24) (citing Nowak's individual tax returns for 2006–2009); *see also Stanert*, 762 F.2d at 782 (citing *Franks*, 438 U.S. at 171–72) (stating that to warrant a *Franks* hearing, a defendant must show that the affidavit could not support a finding of probable cause even if it was supplemented by the omissions).

7

The court concludes that Nowak has failed to satisfy his burden for four reasons. First, Nowak argues that the court should regard Bottjer's affidavit with skepticism because it is the product of an informant who was motivated by money. This, however, does not satisfy the *Franks* standard. *See United States v. Brown*, 3 F.3d 673, 677 (3d Cir.1993) ("It is well-established that a substantial showing of the informant's untruthfulness is not sufficient to warrant a Franks hearing.")

Second, Nowak did not "make a substantial showing" that Bottjer's affidavit contains "intentionally or recklessly misleading omissions. *Franks*, 438 U.S at 171. During the court's January 9, 2014 hearing, Nowak argued that Bottjer's omission of his gambling winnings must have been "intentional" because the IRS possessed documents demonstrating that Nowak gambled. (*See* Mins. Proceedings #42). Nowak, then, imputed this knowledge to Bottjer. These facts do not rise to the level of a "substantial" showing of "recklessness" or "deliberate untruthfulness." *See, e.g.*, *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997) (citing *Franks*, 438 U.S. at 155–56).

Third, even if Nowak's gambling winnings had been included in the affidavit, probable cause existed. The affidavit states that—at Big Fellas alone—the "the total amount of gross receipts that were unreported to the IRS" from 2006 through 2009 was $3,983,000.00. (*See* Setness Decl. (#35-1) Ex. 2, Aff. of Bottjer at ¶ 30) (itemizing the individual years as follows: "2006: $608,508; 2007: $731,231; 2008: $1,242,871; 2009: $1,400,390."). The fact that Nowak might have had "substantial [personal] winnings from gaming," (*see* Pl.'s *Franks* Mot. (#34) at 3:12–13), does not change the fact that one of Nowak's three business underreported nearly four million dollars in receipts.

Fourth, contrary to Nowak's assertion, Nowak did not have "substantial winnings from gaming." (*Id*. at 3:12–13). As discussed above, Nowak's tax returns indicate that he won $872,029.00, lost $934,872.00, and therefore suffered a net loss of approximately sixty-five thousand dollars between

8

2006 and 2009. (*See* Gov't's Opp'n (#37) at 7:20–24) (citing Nowak's individual tax returns for 2006–2009).

Probable cause is a fluid concept. *Gates*, 462 U.S. at 238–39. It is the product of "a practical, common-sense" inquiry, which does not demand mathematical precision. *Id*. However, even if Judge Leavitt was required to make his determination with the eyes of an accountant, probable cause would still exist. Between 2006 and 2009, Nowak: (1) lost approximately sixty-five thousand dollars in gambling; (2) operated a business that allegedly underreported its taxes by $3,983,000.00; and, (3) continuously made cash deposits into his various personal bank accounts. The court, therefore, denies Nowak's motion for a *Franks* hearing.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that the Governments' opposition (#34) is UNSEALED.

IT IS FURTHER ORDERED that Defendants' motion for a Franks' Hearing (#34) and Joinder (#36) are DENIED.

IT IS SO ORDERED.

DATED this 13th day of January, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

9